IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT TAYLOR, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-cv-00356-E |
| | § | |
| THE UNIVERSITY OF TEXAS | § | |
| AT DALLAS, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are two Motions to Dismiss—one filed by Defendant the University of Texas at Dallas and one filed by Defendants Richard Benson and Inga H. Musselman (Doc. Nos. 35 & 37). For reasons that follow, the Court grants both motions.

### Background

Plaintiffs, Dr. Robert Taylor, Dr. John Worrall, and Dr. Galia Cohen, filed this suit in February 2019 against their employer, the University of Texas at Dallas (UTD), as well as UTD's President Richard Benson and Vice President for Academic Affairs and Provost Inga H. Musselman. Each Defendant filed a motion to dismiss the original complaint. The motions were denied as moot after Plaintiffs amended their complaint. Defendants now move to dismiss Plaintiffs' First Amended Complaint.

The following background is taken from the allegations in the amended complaint. Dr. Taylor and Dr. Worrall are tenured professors at UTD. They teach in the Criminology Program, part of the School of Economic, Political and Policy Sciences (EPPS). Dr. Cohen is a full-time untenured instructor in the Criminology Program. UTD's School of EPPS offers an executive

1

master's degree through its Justice Administration and Leadership Graduate Program (JAL).  In the fall of 2015, Dr. Worrall took over directing the JAL program from Dr. Taylor.   In 2014, Dr. Cohen became the Associate Director of JAL.  For many years, students enrolled in the JAL program who successfully attended the Caruth Police Institute (CPI) or the Institute for Law Enforcement Administration (ILEA) were offered academic credit based on equivalent coursework.  They received the grade they earned while attending the appropriate courses at ILEA or CPI.  This "Substitution Process" was described in the *JAL Policies and Procedures*.  UTD knew about the Substitution Process and approved it.

Plaintiffs allege that in late 2017, a new assistant professor who was asked to teach in the JAL program expressed to a colleague that he was uncomfortable with the Substitution Process. Eventually the issue was raised to Provost Musselman.  The long-approved process was distorted by the new professor and described in conspiratorial terms, as though it was kept secret from central administration.  The "disgruntled and misguided" junior professor falsely reported serious and possibly criminal improprieties in the JAL program and that Plaintiffs were the cause.  Benson and Musselman (collectively "the Administrators") and UTD began analyzing the process by which students in the JAL program were given grades and credit for courses previously completed at the executive police training institutes.   In December 2017, the Administrators caused UTD to self-report wrongdoing to its accrediting body, held back diplomas from December 2017 graduates of the JAL program, and launched a full-scale investigation into the possible criminality or financial impropriety of the Substitution Process.

In February 2018, Musselman sent a memo to the "Voting Faculty, Criminology Program." She described her review of the JAL program and concluded "that the Institute courses are fully legitimate substitutions for parallel JAL courses."  With one new procedural policy, the process

2

would be allowed to continue.  Despite this conclusion, the Administrators caused an investigation by the University of Texas System's Chief Inquiry Officer, Tray Atchley.  Plaintiffs allege Musselman had fallen for "wild conspiracy theories" by the professor who accused them. In a May 9, 2018 investigative report, Atchley concluded that "no evidence was discovered indicating an intent to defraud the MS JAL students or UTD leadership."

In May of 2018, Musselman nevertheless notified Dr. Worrall and Dr. Cohen that she was terminating their JAL Director and Associate Director positions effective June 1, 2018.   In addition, the Administrators "pressed forward" under UT System Regents' Rule 31008, which governs termination of faculty.  On July 6, 2018, Musselman issued letters to Plaintiffs ("the July Notice Letters") accusing them of academic fraud for having participated in the Substitution Process for several years and stating that UTD was providing them with notice of the initiation of termination proceedings.  Although Rule 31008 requires that faculty members being considered for termination be given an opportunity to be interviewed, Musselman did not provide Plaintiffs that opportunity.  Nor did Benson ensure she did so.

The July Notice Letters made an offer to discuss the allegations against Plaintiffs.  Plaintiffs attended a requested meeting with counsel, but Musselman would not answer questions about what Plaintiffs were charged with doing.  They never received notice of a specific charge or violation of rule or standard that served as the subject of those meetings.  At the end of the meetings, Musselman stated she would let Plaintiffs know whether she would advance the matter into termination proceedings.  Over the next seven months, Plaintiffs' counsel repeatedly requested information on further proceedings.  Defendants responded that they could not speak about the matter and failed to provide a name-clearing hearing Plaintiffs requested.

The threat of termination "hung over the Plaintiffs' heads" for more than a year.  UTD and Benson eventually discontinued termination proceedings, but before doing so, breached Plaintiffs' right of privacy by releasing Musselman's July Notice Letters to the public, including the *Dallas Morning News* (DMN).  On January 31, 2019, Defendants learned the matter was about to be made public in an exposé by the DMN.  Musselman immediately sent letters to Benson, copying Plaintiffs, with her decision to recommend moving forward with termination proceedings ("the January Letters").  The January Letters repeated the July Notice Letters' accusations that the substitution process violated UTD's transfer credit policy and constituted a severe breach of academic integrity.  She accused Plaintiffs of "falsification of student transcripts, a form of academic fraud" and of "unilaterally offering unsanctioned credits for years."  Plaintiffs allege that the July Notice Letters were confidential under the Texas Public Information Act (TPIA) and the Texas Education Code and should not have been released by UTD or Benson.

The DMN published a story on the front page of its Sunday paper on February 3, 2019 about the JAL program and the Substitution Process.  According to the story, school officials refused to release the investigative report, but the DMN obtained a copy.  On February 6, 2019, Benson issued a lengthy statement to the campus community that contained "stigmatizing innuendo and factual inaccuracies."  On February 11, 2019, Plaintiffs were finally informed that Benson would meet with them to decide whether to accept Musselman's recommendation to go forward with termination.  By then Dr. Worrall had already been terminated from his position as Director of JAL and Dr. Cohen had been terminated as Associate Director of JAL.  In addition, offers to them of employment from other universities were withdrawn.  Dr. Taylor suffered irreparable damage to his consulting business.

Plaintiffs filed this lawsuit in February 2019.  A week after the lawsuit was filed, UTD finally sent Plaintiffs' counsel the two policies they were accused of violating.  In late February and early March of 2019, Benson met with each Plaintiff and read a statement of the charges against them.  Benson described the charges as "violations of university policy on graduate transfer credit, faculty conduct, and generally accepted academic norms."  On April 4, 2019, Benson issued a letter to each Plaintiff.  He informed Dr. Cohen that she would not be terminated, but that what she had done was "wrong" and fell short of the highest standards of academic integrity.  He denied her a hearing.  Benson informed Dr. Taylor and Dr. Worrall that he believed there was good cause for their termination and that he had decided to convene a tribunal to hear charges against them. The charge was that they "oversaw and engaged in a practice of awarding UT Dallas academic credit, with a corresponding UT Dallas grade, for prior participation in non-UT Dallas programs" offered by CPI and ILEA "which was not authorized pursuant to any existing university policy or procedure."

The hearing took place over two days in June 2019 before a panel of UTD professors.  The panel found that UTD did not prove good cause for termination of either Dr. Taylor or Dr. Worrall. Benson accepted the recommendation of the panel not to pursue termination of their tenured appointments.

Plaintiffs allege that the process leading up to the hearing and the testimony at the hearing revealed that Plaintiffs had been denied due process in several ways.  Among other things, Plaintiffs complain of the fact that once the termination process is begun under Rule 31008, there is no deadline by which UTD must make a decision about moving forward with termination, scheduling a due process hearing, or any other step in the process.  Defendants were able to delay a year.  The lack of a prompt resolution rendered the ultimate outcome virtually meaningless and

5

did not provide any reasonable notion of due process. They also complain of the fact that Musselman failed to interview them and of their failure to be informed that the chief investigator for the UT System had been tasked with looking for serious criminal conduct.

Plaintiffs' amended complaint sets out several causes of action. Pursuant to 42 U.S.C. § 1983, they allege Defendants deprived them of liberty interests without procedural due process. They assert liberty interests in their right to be free from invasion of privacy and in their reputations. Plaintiffs also allege that Defendants deprived them of property interests without procedural due process. The specific property interest alleged is the loss of Dr. Worrall's and Dr. Cohen's positions as directors of the JAL program. In addition, Plaintiffs assert a state law claim for invasion of privacy. Plaintiffs allege the Administrators are liable in their official and individual capacities. Plaintiffs seek actual damages, punitive damages against the Administrators, and injunctive relief.

## UTD's Motion to Dismiss

In its motion to dismiss, UTD asserts the Court lacks subject-matter jurisdiction over Plaintiffs' claims against it. Rule 12(b)(1) allows motions to dismiss for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). Lack of subject-matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Id.* Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Id.* Ultimately, a motion to dismiss for lack of subject-matter jurisdiction should be granted only

if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Id.*

When challenging subject-matter jurisdiction under Rule 12(b)(1), a party can make a facial attack or a factual attack. *Patterson v. Rawlings*, 287 F.Supp.3d 632, 637 (N.D. Tex. 2018). If the party merely filed its Rule 12(b)(1) motion, it is considered a facial attack, and the court looks only at the sufficiency of the allegations in the pleading and assumes them to be true. *Id.* If the allegations are sufficient to allege jurisdiction, the court must deny the motion. *Id.* A party can also make a factual attack on subject-matter jurisdiction by submitting evidence, such as affidavits or testimony. *Id.* Such an attack challenges the facts on which jurisdiction depends and matters outside the pleadings, such as affidavits and testimony, are considered. *Id.* The court is free to weigh the evidence and satisfy itself as to the existence of the power to hear the case. *Id.*

UTD's motion raises the issue of Eleventh Amendment immunity. In most cases, Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court. *Green Valley Special Util. Dist. v. City of Schertz, Tex.*, 969 F.3d 460, 471 (5th Cir. 2020). When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived immunity. *Cozzo v. Tangipahoa Parish Counsel*, 279 F.3d 273, 280–81 (5th Cir. 2002).

UTD contends it has Eleventh Amendment immunity from Plaintiffs' procedural due process claims and common-law invasion of privacy claims. (UTD also argues it is not a "person" capable of being suit under 42 U.S.C. § 1983.) In addition, UTD moves to dismiss Plaintiffs' common-law invasion of privacy claim against the Administrators in their individual capacities under the election of remedies provision in the Texas Tort Claims Act.

In response to UTD's motion, Plaintiffs do not contest UTD's arguments regarding jurisdiction over UTD itself.  They do oppose UTD's motion for dismissal of the common-law invasion of privacy claim against the Administrators.

Section 101.106 of the Texas Tort Claims Act is titled "Election of Remedies."  It provides that the filing of a suit under the act against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by plaintiff against any individual employee of the governmental unit regarding the same subject matter.  TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(a).  Conversely, the filing of a suit under the act against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.  *Id.* § 101.106(b).  The provision at issue here, section 101.016(e), provides that if a suit is filed under the tort claims act against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.  *Id.* § 101.106(e).

UTD contends that because Plaintiffs sued it and its employees for common-law invasion of privacy, UTD is entitled to move to dismiss the claim against the employees.  Plaintiffs respond that UTD ignores the purpose of the statute.  Section 101.106 requires Plaintiffs to sue either a state institution or its agents, but not both.  Plaintiffs acknowledge they "erroneously worded" their claim to include all three Defendants.  They submit that if the Court lacks subject-matter jurisdiction over their claims against UTD due to Eleventh Amendment immunity, then granting the motion to dismiss the invasion of privacy claim against the Administrators "goes beyond any rational election of remedies requirement."  Plaintiffs request that the Court grant UTD's motion

for dismissal of the claims against it under Rule 12(b)(1), at which point UTD's motion to dismiss the claims against the Administrators would be moot.

Based on the plain language of § 101.106(e), the Court must dismiss Plaintiffs' claims against the Administrators for common-law invasion of privacy in their individual capacities. If, as here, a suit is filed under the tort claims act against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit. UTD has filed such a motion. The Court grants UTD's motion to dismiss in its entirety.

**The Administrators' Motion to Dismiss**

**1.   Rule 12(b)(1) Arguments**

The Administrators have jointly moved to dismiss the claims against them for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming*, 281 F.3d at 161.

The Court has already concluded that UTD's invocation of the election of remedies provision deprives the court of subject-matter jurisdiction over Plaintiffs' common-law invasion of privacy claim against the Administrators in their individual capacities. The Administrators also contend that Plaintiffs' common-law invasion of privacy claim against them in their official capacities is barred by Eleventh Amendment immunity. The Texas Tort Claims Act does not waive Eleventh Amendment immunity to suit in federal courts. *Sherwinski v. Peterson*, 98 F.3d 849, 851–52 (5th Cir. 1996). Plaintiffs did not address this argument in their response to the motion to dismiss. The Court concludes the Administrators are entitled to Eleventh Amendment

9

immunity as to Plaintiffs' common-law invasion of privacy action against them in their official capacities.

The Court must still consider the Administrators' arguments regarding Plaintiffs' claims for deprivation of a constitutionally protected liberty or property interest.  The Administrators assert that Plaintiffs' procedural due process claims seeking damages against them in their official capacities are barred by Eleventh Amendment immunity.  Plaintiffs agree.  They seek only injunctive relief from the Administrators in their official capacities.

To state a Fourteenth Amendment claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest.  *Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 242 (5th Cir. 2018).  The Administrators contend that Plaintiffs' procedural due process claims are moot because there was no deprivation of a liberty or property interest.  The Administrators argue that there is no live controversy because UTD did not terminate Plaintiffs' employment.  According to the Administrators, Plaintiffs filed their lawsuit before it was ripe because the termination process was ongoing.  Now that the termination process is complete, their lawsuit has become moot.

Plaintiffs respond they have specifically alleged that even though they did not lose their jobs, they lost directorships, income, and job offers as a result of the Administrators' actions.  They also maintain they remain in a "precarious position" at UTD.

The Court is not persuaded by the Administrators' argument that  Plaintiffs' procedural due process claims are moot.   Here, Plaintiffs have identified other alleged liberty or property interests  apart  from  their  employment. Whether  these  interests  are  constitutionally  protected interests is a different question.  The cases cited by the Administrators in support of their mootness argument were not decided on mootness, but rather on the issue of whether the plaintiff had stated

10

a claim for deprivation of a protected property interest under Rule 12(b)(6). *See Gentilello v. Rege*, 627 F.3d 540, 544–45 (5th Cir. 2010); *Richards v. City of Weatherford*, 145 F. Supp. 2d 786, 792 (N.D. Tex. 2001), *aff'd*, 275 F.3d 46 (5th Cir. 2001).

The Administrators next contend that Plaintiffs lack standing to obtain the injunctive relief they seek. The doctrine of standing is an essential and unchanging part of the case-or-controversy requirement of Article III. *Tenth St. Residential Ass'n v. City of Dallas, Tex.*, 968 F.3d 492, 499 (5th Cir. 2020). To invoke the jurisdiction of the federal courts, a claimant must satisfy three well-known requirements of standing. First, the plaintiff must have suffered an injury-in-fact, which is an invasion of a legally protected interest which is concrete and particularized and actual or imminent. *Id.* Second, there must be a causal connection between the injury and the conduct complained of. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* The Administrators argue that the requested injunctions do not redress an actual or imminent injury-in-fact.

In their amended complaint, Plaintiffs seek an injunction: (1) barring Defendants from terminating or taking other retaliatory action against them based on any grounds alleged in the July Notice Letters or the January Letters because the opportunity to be heard at a meaningful time and in a meaningful manner has been lost; (2) preventing Defendants from taking any adverse employment actions against Plaintiffs without a name-clearing hearing; (3) compelling Defendants to provide them with the requisite due process, including a name-clearing hearing for Dr. Cohen, which has been denied; and (4) ordering UTD to expunge the false, inaccurate, and defamatory statements regarding Plaintiffs from their files.

On this issue, Plaintiffs respond that injunctive relief "could well redress their complaints regarding the very real, and demonstrated, procedural violations by Defendants and deprivations of Plaintiffs' due process, as well as the unlawful publication of confidential information."

The Court agrees that Plaintiffs lack standing to seek some of the requested injunctive relief because it does not redress an imminent injury.  First, Plaintiffs want to bar the Administrators from terminating their employment or taking other retaliatory action against them for reasons given in the letters.  The employment action has already been taken.  Plaintiffs have retained their jobs.  This request for injunction does not redress an imminent injury.  Further, Plaintiffs seek an injunction preventing Defendants from taking adverse employment action against them without a name-clearing hearing.  Again, any adverse employment action based on the JAL program has occurred.  And Dr. Worrell and Dr. Taylor already had name-clearing hearings.  However, the Court cannot conclude at this stage of the proceedings that all of the injunctive relief Plaintiffs seek fails to redress an actual injury in fact.  Plaintiffs request a name-clearing hearing for Dr. Cohen, who did not have one.  Assuming she can show she was entitled to one, this form of injunctive relief would redress an actual injury-in-fact.  In addition, Plaintiffs seek an injunction ordering UTD to expunge false, inaccurate, and defamatory statements in their employment records.  Again, the Court concludes Plaintiffs have sufficiently alleged standing to seek this relief as, if they are entitled to it, such an injunction would redress an alleged actual injury-in-fact.

Next, the Administrators claim that Plaintiffs' request for injunctive relief for their procedural due process claims against them in the official capacities is also barred by Eleventh Amendment immunity.  The question is whether the Administrators are subject to suit under the *Ex parte Young* exception.  Under *Ex parte Young*, a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law.  *Williams*

*ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (citing *Ex parte Young*, 209 U.S. 123, 167–68 (1908)).  The exception rests on a legal fiction—the premise that a state official is not the State for sovereign-immunity purposes when a federal court commands him or her to do nothing more than refrain from violating federal law.  *Id.*  There are three basic elements of an *Ex parte Young* lawsuit.  The suit must:  (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state law.  *Id.*  An *Ex parte Young* suit must also seek equitable relief—relief that is declaratory or injunctive in nature and prospective in effect.  *Id.*  To determine whether a suit complies with the requirements of *Ex parte Young*, the court need only conduct a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Id.* The inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim.  *Verizon Maryland, Inc. v. Pub. Serv. Commission of Maryland*, 535 U.S. 635, 646 (2002).  An allegation of an ongoing violation of federal law is ordinarily sufficient.  *Id.*

The Administrators contend that Plaintiffs' claims fall outside *Ex parte Young* because there is no ongoing violation of federal law.  The Administrators dispute that Plaintiffs have alleged violations of federal law, something they argue in detail in the Rule 12(b)(6) portion of their motion to dismiss.  For purposes of *Ex parte Young* analysis, however, the Court will assume there are allegations of federal law violations and merely examine whether the alleged violations are ongoing.  Plaintiffs respond that they have alleged the Administrators are violating Plaintiffs' rights on an ongoing basis and direct the Court to three particular paragraphs of their amended complaint.  Plaintiffs allege in part that Defendants' wrongful conduct, including the making and publishing of false and defamatory statements about them and refusal to grant name-clearing

hearings is ongoing and continuing conduct. Without getting into the merits of Plaintiffs' argument, the Court concludes that they have alleged ongoing violations.

### 2. Rule 12(b)(6) Arguments

The Court turns to the Administrators' arguments under Rule 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), the defendant may move to dismiss the plaintiff's claims for "failure to state a claim upon which relief may be granted." *Id.* 12(b)(6). To survive such a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual content. *Id.* at 686. In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

The Administrators first allege that Plaintiffs have failed to state a procedural due process claim against them. To state a claim for procedural due process, the plaintiff must demonstrate that a state actor deprived him of life, liberty, or property without due process of law. *See Jordan v. Fisher*, 823 F.3d 805, 810 (5th Cir. 2016). The Administrators argue that Plaintiffs have failed to plead a constitutionally protected liberty or property interest that has been interfered with. They also assert Plaintiffs have failed to demonstrate that the process they received was insufficient.

14

Plaintiffs have identified two liberty interests—the right to be free from an invasion of privacy and in their reputations.  Plaintiffs' allegations about invasion of privacy arise out of the July Notice Letters from Provost Musselman.  Those letters recommended that UTD initiate termination proceeding against Plaintiffs due to academic fraud.  Plaintiffs allege that in response to an TPIA request, UTD disclosed those letters.

Liberty interests protected by the Fourteenth Amendment may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," or it may arise from an expectation or interest created by state laws or policies.  *Id.*  The Constitution protects individuals against invasion of their privacy by the government.  *Ramie v. City of Hedwig Village, Tex.*, 765 F.2d 490, 492 (5th Cir. 1985).  The liberty interest in privacy encompasses two notions:  the freedom from being required to disclose personal matters to the government and the freedom to make certain kinds of decisions without government interference.  *Id.*  The disclosure strand, or confidentiality branch, of the privacy interest includes the right to be free from the government disclosing private facts about its citizens.  *Id.*  There is no Fifth Circuit authority on what types of disclosures are personal enough to trigger the protection of the confidentiality branch.  *Wyatt v. Fletcher*, 718 F.3d 496, 505 (5th Cir. 2013); *Zaffuto v. City of Hammond*, 308 F.3d 485, 490 (5th Cir. 1990).

Plaintiffs' amended complaint does not sufficiently demonstrate a liberty interest in privacy under the circumstances.  Plaintiffs allege an interest under the confidentiality branch.  They are employees of a public university that were subjects of an investigation by their employer.  Plaintiffs have failed to allege facts to demonstrate that UTD's disclosure was personal enough to trigger privacy protection.

Nor have Plaintiffs sufficiently alleged a privacy expectation or interest created by state law or policies.  Their amended complaint refers to a right to privacy in § 51.971(c)(1) of the Texas

Education Code and the TPIA.  But Plaintiffs have not pleaded facts to show these laws created a privacy interest in this case.  Section 51.971 involves creation of compliance programs as a way to ensure compliance by officers and employees of institutions of higher education with applicable laws, rules, and policies.  TEX. EDUC. CODE ANN. § 51.971.  Plaintiffs rely on a provision making confidential information that reveals the identity of someone who makes a report to the compliance office, sought guidance from the office, or participated in an investigation.  *Id.* § 51.971(c)(1).  They have not demonstrated the applicability of this provision in this case.  Nor have they pleaded facts to show the elements of an invasion of privacy claim under state law, which would require them to demonstrate the matter publicized is not of legitimate public concern.  *See Industrial Found. of the South v. Tex. Ind. Acc. Bd.*, 540 S.W.2d 668, 682 (Tex. 1976).

Plaintiffs also allege deprivation of a liberty interest in damage to their reputations.  Discharge from public employment under circumstances that put the employee's reputation, honor, or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment to a procedural opportunity to clear one's name.  *Rosenstein v. City of Dallas, Tex.*, 876 F.2d 392, 395 (5th Cir. 1989).  To determine whether § 1983 affords a government employee a remedy for deprivation of such a liberty interest, the plaintiff must show:  (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request.  *Bledsoe v. City of Horn Lake, Ms.*, 449 F.3d 650, 653 (5th Cir. 2006); *see Bellard v. Gautreaux*, 675 F.3d 454, 461–62 (5th Cir. 2012) (among other things, employee must prove she was discharged to succeed on claim for denial of name-clearing hearing).  Because Plaintiffs were not discharged from employment at UTD, they have failed to state a claim for procedural due process

16

violations based on a liberty interest in their reputations.  The Court is not persuaded by Plaintiffs'

argument that "given the totality of these unique circumstances" it should find otherwise.

Finally, Plaintiffs contend they have been deprived of property interests without due

process.  Plaintiffs base this claim on the fact that the Administrators stripped Dr. Worrall and Dr.

Cohen of their positions as Director and Associate Director of JAL, which included a pay cut.

Plaintiffs' amended complaint also mentions lost job opportunities and consulting opportunities.

To enjoy a property interest in employment, an employee must have a legitimate claim of

entitlement created and defined by existing rules or understandings that stem from an independent

source such as state law.  *Gentilello*, 627 F.3d at 544.  Tenured professors have a protected property

interest in continued employment.  *See id.*  However, the due process clause does not protect

specific job duties or responsibilities absent a statute, rule, or express agreement reflecting an

understanding that there is a unique property interest in those duties or responsibilities.  *Id.*  To

establish a due process claim from a demotion, Plaintiffs must point to some state or local law,

contract or understanding that created a property interest in the directorship positions.  *Id.* at 545.

Absent a property interest, there is nothing subject to due process protections.  *Id.*  Here, Plaintiffs

are still employed by UTD and they have failed to demonstrate that they had a property interest in

the directorship positions or lost opportunities.

Plaintiffs request the opportunity to replead in the event the Court finds they have failed to

state a claim.  The Court concludes that further amendment is not warranted for Plaintiffs'

procedural due process claim based on an alleged deprivation of a liberty interest in their

reputations.  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329

(5th Cir. 2002).  Since they were not discharged from UTD employment, it would not be possible

to state this type of claim.  The Court will give them the opportunity to replead their claims for

procedural due process violations based on deprivations of a liberty interest in privacy and a property interest.  The Administrators have also argued that they are entitled to qualified immunity. Because these arguments are tied to the allegations in the complaint, the Court will deny the motion's qualified immunity grounds without prejudice to the Administrators reasserting them again after Plaintiffs amend their complaint.

In conclusion and summary, the Court grants both motions to dismiss.  The Court concludes that Plaintiffs' claims against UTD are dismissed for lack of subject-matter jurisdiction. Plaintiffs' claims for common-law invasion of privacy against the Administrators in their official capacity and individual capacity are also dismissed for lack of subject-matter jurisdiction.  Further, Plaintiffs' claims against the Administrators in their official and individual capacities for procedural due process violations based on deprivation of a liberty interest in their reputations is dismissed with prejudice.  The Court dismisses without prejudice Plaintiffs' remaining claims for procedural due process violations based on deprivation of a liberty interest in their right to privacy and a property interest.  The Court will allow Plaintiffs to replead their remaining claims, keeping in mind that the Court has found they lacked standing to seek certain injunctive relief.  Any amended complaint is due within 30 days of this order.  If Plaintiffs do not file an amended complaint, the disposition of their remaining claims will be converted into dismissal with prejudice.

**SO ORDERED.**

Signed September 29, 2020.

ADA BROWN
UNITED STATES DISTRICT JUDGE

18